A. Benjamin Goldgar, United States Bankruptcy Judge
Before the court for ruling is the objection of chapter 13 trustee Glenn Stearns to confirmation of debtor William Moss's amended plan. The trustee objects on the ground that Moss is not contributing all of his projected disposable income to pay unsecured creditors, as the Bankruptcy Code requires. For the reasons discussed below, the objection will be overruled.
1. Background
The relevant facts are taken from the parties' papers, Moss's schedules and other forms filed in the bankruptcy case, and the court's docket. No facts are disputed.
Moss filed this chapter 13 case after two sporting goods stores he ran went out of business, and he was sued on guarantees signed in connection with the stores. Moss now works as Regional Director of Sales for Pella Windows & Doors. His wife Sheila is a self-employed speech pathologist. Since 2016, the two have lived at a home on Judson Avenue in Highland Park. Sheila owns the Judson Avenue property and is the sole obligor on the note securing the mortgage on the property. Sheila makes the $1,715.35 monthly mortgage payment.
Along with his schedules and statement of financial affairs, Moss filed Official Form 122C-1, his Statement of Current Monthly Income, and Official Form 122C-2, his Calculation of Disposable Income. The figures on those forms give rise to the current controversy.
Moss's calculation of current monthly income began with his monthly income of $9,379.85 and Sheila's monthly income of $3,714. Moss then made a marital adjustment that excluded all of Sheila's income on the basis that it went toward expenses that were not his household expenses. One of the expenses Moss listed was the $1,715 mortgage payment Sheila makes.
Even with Sheila's income excluded, Moss's monthly income exceeded the median family income for an Illinois household of two. Because he was an above-median debtor, his disposable income had to be determined under section 1325(b)(3) of the Code.
Form 122C-2 contained Moss's calculation of his disposable income using the deductions under section 707(b)(2)(A). Line 9 of the form allows an above-median debtor like Moss to deduct "mortgage or rent expenses" using the IRS Local Standards. On line 9, Moss took a mortgage expense deduction of $1,539. The result was to reduce the monthly disposable income shown at the end of the form on line 45. Line 45 listed Moss's monthly disposable income as $1,150.84.
Moss has proposed an amended plan under which he would make monthly payments of $2,033.71 for 60 months. Of that amount, general unsecured creditors would *340 be paid a total of $70,425. Because unsecured claims in the case total $198,575, unsecured creditors stand to receive only 35% of what they are owed.
The trustee has objected to confirmation of the plan, arguing that it fails to devote all of Moss's projected disposable income to pay his unsecured creditors. That is so, the trustee maintains, because on Form 122C-1 Moss has taken a marital adjustment that deducts Sheila's mortgage payment, and on Form 122C-2 he has deducted a mortgage expense for himself. The trustee takes no position on which of these deductions is correct. His only complaint is that Moss has taken the same deduction on both the income and expense sides of the disposable income equation. The trustee calls this "double dipping."
2. Discussion
The trustee's objection will be overruled. The trustee tries to walk a tightrope here. He takes no position on either of the two controversial questions of bankruptcy law Moss's case poses: (1) on the income side, whether a debtor whose spouse owns the marital residence and pays the mortgage can deduct the payment because it is not the debtor's household expense; and (2) on the expense side, whether a debtor who has no mortgage expense himself can still claim the IRS Local Standard housing deduction as if he did. The trustee objects simply that Moss may not deduct both. The trustee bases his objection on the supposed legal principle that an above-median chapter 13 debtor cannot "double dip." But there is no such principle.
To appreciate the nature of the trustee's tightrope act, some background is necessary on the legal issues the trustee prefers not to address - or, to extend the metaphor, the pits he wants to avoid falling into.
Section 1325(b)(1)(B) of the Code says that if the trustee or the holder of an allowed unsecured claim objects to confirmation of a chapter 13 debtor's plan, the plan cannot be confirmed unless it provides that "all of the debtor's projected disposable income to be received in the applicable commitment period ... will be applied to make payments to unsecured creditors ...." 11 U.S.C. § 1325(b)(1)(B). A debtor's disposable income generally consists of his "monthly income" minus his "reasonably necessary" expenses. 11 U.S.C. § 1325(b)(2). That much is straightforward. But as usual, the devil lies in the details - and there are many.
First, the income side. The calculation of a debtor's disposable income begins with a determination of his "current monthly income," or "CMI." CMI is defined in section 101(10A) of the Code and has two components. One is "the average monthly income from all sources that the debtor receives" during the six-month period before the case was filed. 11 U.S.C. § 101(10A)(A). The other is "any amount paid by any entity other than debtor ... on a regular basis for the household expenses of the debtor or the debtor's dependents ...." 11 U.S.C. § 101(10A)(B). A debtor calculates his CMI using Official Form 122C-1, which implements section 101(10A).
Because CMI includes amounts others pay on a regular basis for a debtor's household expenses, Form 122C-1 provides on line 13 for a "marital adjustment" that allows a married debtor to deduct the portion of his spouse's income not regularly paid for his household expenses. See In re Trimarchi , 421 B.R. 914, 918 (Bankr. N.D. Ill. 2010). When a married debtor's non-debtor spouse pays the mortgage on the marital residence, courts have split on whether the debtor can deduct the payment from his CMI because it is not a *341 "household expense[ ] of the debtor." Some courts have allowed the deduction. See, e.g., In re Baker , 580 B.R. 662, 667-71 (Bankr. E.D. Va. 2017) ; In re Toxvard , 485 B.R. 423, 435-37 (Bankr. D. Colo. 2013). Others have not. See, e.g., In re Vollen , 426 B.R. 359, 372-73 (Bankr. D. Kan. 2010) ; Trimarchi , 421 B.R. at 921-22.
Next, the expense side. When a debtor's CMI exceeds the median income for similar Illinois households, his projected disposable income is determined by subtracting the expenses allowed under section 707(b)(2)(A).See 11 U.S.C. § 1325(b)(3). Section 707(b)(2)(A)(ii)(I) says that a debtor's monthly expenses are the "applicable monthly expense amounts specified under the National and Local Standards" established by the Internal Revenue Service. 11 U.S.C. § 707(b)(2)(A)(ii)(I). An above-median debtor lists his expenses on Official Form 122C-2, which implements section 707(b)(2)(A) and produces the debtor's disposable income figure.
Lines 8 through 15 of Form 122C-2 allow a debtor to deduct expenses based on the IRS Local Standards. On lines 9a-c, the debtor lists "House and utilities - Mortgage or rent expenses," putting "mortgage or rent expenses" on line 9a. When a debtor has no mortgage payment, courts are split on whether the debtor can nevertheless deduct the Local Standard mortgage expense on line 9a. Some courts have allowed the deduction. In re Morgan , 374 B.R. 353, 359-60 (Bankr. S.D. Fla. 2007) ; In re Farrar-Johnson , 353 B.R. 224, 230-31 (Bankr. N.D. Ill. 2006). Others, probably a majority, have not. See, e.g., In re Hector , No. 16-05602-5-SWH, 2017 WL 4286138, at *5 (Bankr. E.D.N.C. Sept. 26, 2017) ; In re Haroldson , No. 14-26941 MER, 2016 WL 3034794, at *2-3 (D. Colo. May 19, 2016).
Here, however, the trustee has not argued either that Moss was unable to deduct the mortgage payment as part of the marital adjustment, or that Moss was unable to deduct the Local Standard mortgage expense. On these issues, issues that have divided the courts, the trustee is simply agnostic. His position seems to be that he need not choose a side in these debates because no matter which deduction a debtor in Moss's circumstance can take, at the very least he cannot take both. For a debtor to do that, the trustee says, would constitute "double dipping."
The problem with the trustee's position is that the legal principle on which that position is premised - no "double dipping" for above-median chapter 13 debtors - does not exist. Sturm v. U.S. Trustee , 455 B.R. 130, 135 (N.D. Ohio 2011). At times, courts do seem to endorse such a principle. See, e.g., In re Linville , 446 B.R. 522, 527 (Bankr. D.N.M. 2011) ; Trimarchi , 421 B.R. at 920 ; In re Zahringer , No. 07-30217, 2008 WL 2245864, at *1 (Bankr. E.D. Wis. May 30, 2008) ; In re Patterson , 392 B.R. 497, 505 (Bankr. S.D. Fla. 2008) ; In re Hylton , 374 B.R. 579, 585-86 (Bankr. W.D. Va. 2007). But these courts use the "double dipping" phrase "only to describe legal conclusions reached [on other grounds]," typically conclusions that the Code either allows or does not allow the deduction in question. Sturm , 455 B.R. at 135. They do not endorse "no double dipping" as an independent legal principle.
The Code is what determines a debtor's CMI and expenses. The Code defines CMI a particular way: to include income another person pays for the debtor's regular household expenses. 11 U.S.C. § 101(10A). Expenses either fit that definition or they do not. The Code likewise defines a debtor's "reasonably necessary" expenses a particular way: in an above-median case, to include the applicable monthly expense amounts under the IRS National and Local Standards. 11 U.S.C. § 707(b)(2)(A).
*342 Expenses either qualify or they do not. Whether a debtor can make the marital adjustment to CMI for a particular expense under section 101(10A), and whether he can claim certain expenses under section 707(b)(2), depends on the Code. It may well be that in some cases debtors can do both. But the Code, not some general prohibition on "double dipping," is the deciding factor. Sturm , 455 B.R. at 135 (noting that "the statute says nothing of 'double-dipping' ").
With no "anti-double dipping" rule available, the trustee could not just tiptoe between the two legal controversies this case presents. He had to confront them head on, taking a position on one or the other or both. That is, he had to argue either that Moss's marital adjustment on Form 122C-1 was wrong, or that Moss's mortgage expense deduction on Form 122C-2 was wrong, or perhaps that both were wrong. But he has declined to make any of these arguments.
Because he has declined to make them, the arguments will not be addressed. It is not the job of courts to construct and research parties' arguments for them. United States v. Holm , 326 F.3d 872, 877 (7th Cir. 2003). Parties have to construct and research their own arguments. And it should go without saying that courts need not consider arguments parties have not made at all. Johnson v. Williford , 821 F.2d 1279, 1288 (7th Cir. 1987) ; Budnick Converting, Inc. v. NebulaGlass Int'l, Inc. , 866 F.Supp.2d 976, 987 (S.D. Ill. 2012).
Since the trustee's objection to confirmation is based solely on a "no double dipping" principle that has no basis in chapter 13 bankruptcy law, the objection must be overruled.
3. Conclusion
For these reasons, the objection of chapter 13 trustee Glenn Stearns to confirmation of the amended plan of debtor William Moss is overruled.